## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Progressive Preferred Insurance Company,

                Plaintiff/
                Counter Defendant,

v.

Trevon McMorris,

                Defendant,

and

Martha Perea de Madrid, as Trustee for the
Heirs and Next of Kin of Jose Angel
Madrid Salcido,

                Defendant/
                Counter Claimant.

Civil No. 20-2590 (DWF/KMM)

**MEMORANDUM
OPINION AND ORDER**

---

Beth A. Jenson Prouty, Esq., and Stephen M. Warner, Esq., Arthur, Chapman, Kettering, Smetak & Pikala P.A., counsel for Plaintiff.

Isaac I. Tyroler, Esq., Tyroler Injury Law; and Rachel S. Leonard, Esq., Martineau Leonard PLLC, counsel for Martha Perea de Madrid.

---

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought by Plaintiff Progressive Preferred Insurance Company ("Progressive") (Doc. No. 18) and Defendant Martha Perea de Madrid ("Perea de Madrid"), as the Trustee for the Heirs and

Next of Kin of Jose Angel Madrid Salcido ("Madrid Salcido") (Doc. No. 20).[1]  For the reasons set forth below, the Court grants Progressive's motion and denies Perea de Madrid's motion.

## BACKGROUND

On May 1, 2019, McMorris was parked in a 2005 Dodge Durango (the "Durango") in Minneapolis.  (Doc. No. 23 ("Jensen Prouty Aff.") ¶ 3, Ex. A ("Plea Hr'g Trans."); at 9-10.)  Police approached McMorris based on a report of a suspicious vehicle in the area.  (*Id.*; *see also* Doc. No. 1 ("Compl.")  ¶ 12; Doc. No. 9 ("Answer") ¶ 2.)  McMorris fled the police in the Durango.  (Plea Hr'g Trans. at 10; Compl. ¶ 15; Answer ¶ 2.)  Soon after, McMorris crashed the Durango into a vehicle driven by Madrid Salcido (the "Crash").  (Plea Hr'g Trans. at 10-11.)  Sadly, the Crash killed Madrid Salcido.  (*Id.*; Compl. ¶ 18; Answer ¶ 2.)

McMorris pleaded guilty to and was convicted of a felony level offense for fleeing the police in a motor vehicle which resulted in the death of another, in violation of Minn. Stat. § 609.487, subd. 4.[2]  (Jensen Prouty Aff. ¶¶ 5-6, Exs. D ("Warrant of Commitment"), E ("Petition"); Compl. ¶ 19; Answer ¶ 2.)

---

[1]     Defendant Trevon McMorris ("McMorris") was personally served with the complaint in this action on January 20, 2021 but did not answer.  (*See* Doc. Nos. 12 and 13.)

[2]     Minn. Stat. § 609.487.4 provides:

Subd. 4. Fleeing officer; death; bodily injury.
Whoever flees or attempts to flee by means of a motor vehicle a peace officer who is acting in the lawful discharge of an official duty, and the

At the time of the Crash, McMorris was a named insured under an auto insurance policy issued by Progressive.[3]  (Jensen Prouty Aff. ¶ 7, Ex. F (the "Policy").)  The Policy contains a section titled "Part I–Liability to Others," which provides that Progressive "will pay damages for bodily injury and property damage for which an insured person becomes legally responsible because of an accident."  (Policy at 4.)  The Policy also includes the following exclusion:

> EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY.  IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

---

> perpetrator knows or should reasonably know the same to be peace officer, and who in the course of fleeing in a motor vehicle or subsequently by other means causes the death of a human being not constituting murder or manslaughter or any bodily injury to any person other than the perpetrator may be sentenced to imprisonment as follows:
>
> (a)   if the course of fleeing results in death, to imprisonment for not more than 40 years or to payment of a fine of not more than $80,000, or both; or . . . .

Minn. Stat. § 609.487, subd. 4.  The statute defines "flee" in part to mean "to increase speed . . . with intent to attempt to elude a peace officer."  *Id.* at subd. 1.

During his plea hearing McMorris confirmed his understanding that the Crash caused Madrid Salcido's death and agreed that the Crash resulted from his attempt to flee and evade the police while driving a motor vehicle.  (Plea Hr'g Trans. at 11.)

[3]   The Durango was added to the Policy on May 1, 2019, effective 12:43 p.m. with liability coverage limits up to $100,000 per person/$300,000 per accident.  (Policy at 1-2 (for the purposes of citation, the Court references the electronic case filing page numbers on the exhibit, not the page numbers in the Policy itself).)

Coverage under this Part I, including [Progressive's] duty to defend, will not apply to any insured person for:

. . . .

15.  bodily injury or property damage caused by, or reasonably expected to result from, a criminal act or omission of that insured person.  This exclusion applies regardless of whether that insured person is actually charged with, or convicted of, a crime.  For purposes of this exclusion, criminal acts or omissions do not include traffic violations ("Criminal Act Exclusion").

(Policy at 4-5.)

Following the Crash, Perea de Madrid, as Trustee for the Heirs and Next of Kin of Madrid Salcido, made a limits demand for the liability coverage available under the Policy.  (Compl. ¶ 20; Answer ¶ 2.)  Progressive later filed this action seeking a declaratory judgment that the Criminal Act Exclusion bars any coverage for the Crash.  (Compl. at 6.)  Perea de Madrid counterclaimed for a declaration of coverage, claiming in part that the Criminal Act Exclusion conflicts with the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. §§ 65B.41 *et seq*. ("No-fault Act").  (Answer at 2-4.)  Both parties moved for summary judgment. (*See* Doc. Nos. 18, 20.)

Progressive argues that the Criminal Act Exclusion unambiguously precludes liability coverage to McMorris because the bodily injury to Madrid Salcido was caused by McMorris's criminal act of fleeing the police.  (Doc. No. 22 ("Progressive Memo.") at 7-10.)  Perea de Madrid contends that the Criminal Act Exclusion is void and unenforceable because it conflicts with the No-Fault Act.  (Def. Memo. at 4-10; Doc. No. 29 ("Def. Opp.") at 2-7; Doc. No. 34 ("Def. Reply") at 2-3.)  She further argues that

4

even if the Criminal Act Exclusion is not void, it does not apply because traffic violations are exempt and McMorris caused the crash because he was speeding.[4]  (Def. Memo. at 10-13; Def. Opp. at 7-9; Reply at 6-9.)  She also contends that the Criminal Act Exclusion is ambiguous because it does not address what happens when a criminal act leads to a traffic violation that actually causes an accident.  (Def. Memo. at 13-14; Def. Opp. at 9-10; Def. Reply at 7.)  Finally, Perea de Madrid argues that public policy favors coverage.  (Def. Memo. at 5-9; Reply at 5-7.)

## DISCUSSION

### I.  Legal Standards

#### A.  Summary Judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

---

[4]     Perea de Madrid initially argued that McMorris was speeding and ran a stop sign while fleeing the police and that those traffic violations ultimately caused the Crash.  (*See* Def. Memo. at 1-2, 11-14; *see also* Def. Opp. at 2, 7-10.)  Perea de Madrid later informed the Court that she had unintentionally cited an incorrect intersection where the Crash occurred (Doc. No. 33) and amended her argument insofar as she contends that McMorris caused the Crash because he was speeding (Def. Reply at 6-7).

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

This Court will consider the cross-motions drawing inferences against each movant as warranted. *See, e.g.*, *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d at 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.    State Law Controls

Because this case is before the Court based on diversity jurisdiction, Minnesota's substantive law controls the analysis. *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 388 (8th Cir. 2016); *Babinski v. Am. Fam. Ins. Grp.*, 569 F.3d 349, 351–52 (8th Cir. 2009). With respect to Minnesota state law, a district court is bound by the decisions of the Minnesota Supreme Court. *Qwest Corp. v. City of Des Moines, Iowa*, 896 F.3d 843, 845 (8th Cir. 2018).

Where there is no Supreme Court opinion directly on point, a district court may consider relevant state precedent, analogous decisions, considered dicta, and any other

reliable data to determine how the state's highest court would decide. *Qwest Corp*, 896

F.3d at 845. When a state's high court has not decided an issue, it is "a well-recognized

rule that federal courts may not reject a state court of appeals decision" solely for that

reason, and where the appeals court "rests its considered judgment upon the rule of law

which it announces, that is a datum for ascertaining state law which is not to be

disregarded by a federal court unless it is convinced by other persuasive data that the

highest court of the state would decide otherwise." *Wong v. Wells Fargo Bank N.A.*, 789

F.3d 889, 897 (8th Cir. 2015) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237

(1940)).

## C.    Minnesota Insurance Law

"Under Minnesota law, interpretation of an insurance policy, including whether an

exclusion is valid and enforceable, is a question of law to be decided by the court."

*Grinnell Mut. Reinsurance Co. v. Schweiger*, 685 F.3d 697, 701 (8th Cir. 2012)

(collecting Minnesota cases). Interpretation of insurance contracts follows "the general

rules of contract law, giving terms their plain and ordinary meaning to honor the intent of

the parties." *Econ. Premier Assur. Co. v. W. Nat. Mut. Ins. Co.*, 839 N.W.2d 749, 752

(Minn. Ct. App. 2013).

Whether the language of an insurance policy is ambiguous is also a question of

law. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.*, 275 N.W.2d 32, 34 (Minn.

1979). "If the language of the policy is reasonably subject to more than one

interpretation, there is ambiguity. If it is not reasonably subject to more than one

interpretation, there is no ambiguity." *Id.* Where there is no ambiguity, "the language

7

used must be given its usual and accepted meaning." *Bobich v. Oja*, 258 Minn. 287, 294 (1960). When policy language is ambiguous, it "will be construed against the insurer according to the reasonable expectations of the insured." *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.,* 762 N.W.2d 572, 575 (Minn. 2009) (internal quotation marks and citation omitted).

Insurance policy exclusions must be given the same consideration as any other part of the contract in determining the scope of coverage. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). Courts are required to read policies in favor of finding coverage, construing words of inclusion broadly, but words of exclusion narrowly, and looking past the words used by the parties to the underlying allegations. *Westfield Ins. Co. v. Robinson Outdoors Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012) (applying Minnesota law). The language of an exclusion is to be interpreted in accordance with the expectations of the insured. *Thommes*, 641 N.W.2d at 880. These expectations, in turn, are to be considered in light of the exclusion's purpose. *Am. Fam. Mut. Ins. Co. v. Peterson*, 405 N.W.2d 418, 422 (Minn. 1987).

### D.   Minnesota's No-Fault Act

"The Minnesota No-Fault Act prescribes the necessary insurance coverage that each vehicle owner must obtain." *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). An express purpose of the Minnesota No-Fault Act is "to relieve the severe economic distress of uncompensated victims of automobile accidents." Minn. Stat. § 65B.42(1). While primarily aimed at providing first-party benefits to the insured, it also addresses third-party benefits by requiring that each insurance policy include

8

liability coverage to compensate a third party who is injured in an automobile accident for which the insured is liable.  Minn. Stat. § 65B.49 subds. 2, 3; *see also Lobeck*, 582 N.W.2d at 249 ("The No–Fault Act is primarily aimed at providing first-party benefits to the insured . . .").

"Because the No-Fault Act's primary purpose is to ensure the availability of first-party benefits, the law of liability insurance that addresses third-party benefits is virtually unaffected by the No-Fault Act." *Lobeck*, 582 N.W.2d at 250; *accord Latterell*, 801 N.W.2d at 922 ("[T]he No-Fault Act leaves unaltered the basic framework of the law of liability insurance, but imposes restrictions on the ability of insurers to exclude first-party benefits." (internal quotation marks and citation omitted)).  To this end, "nothing in the No-Fault Act . . . prohibits insurance companies from including some restrictions on liability coverage in their contracts." *Lobeck*, 582 N.W.2d at 251.

Therefore, "the distinction between third-party and first-party benefits is crucial when determining the validity of a policy exclusion." *Lobeck*, 582 N.W.2d at 250; *see also Latterell*, 801 N.W.2d at 922 ("The validity of an exclusionary provision in an insurance policy may depend on whether the exclusion applies to first- or third-party coverage . . .").  While not all exclusions to liability coverage are valid, they are "less likely to be contrary to the No-Fault Act than are exclusions to first party coverage." *Lobeck*, 582 N.W.2d at 251; *accord Great W. Cas. Co. v. Decker*, 358 F. Supp. 3d 835, 851 (D. Minn. 2019) ("[I]nsurers have more leeway to limit coverage for 'third party' claims than they do for 'first party' claims.").

Minnesota courts "determine whether an exclusion in an insurance contract violates the No-Fault Act . . . by first considering whether the terms of the exclusion are unambiguous." *Pepper v. State Farm Mut. Auto. Ins. Co.*, 813 N.W.2d 921, 927 (Minn. 2012) (citing *Latterell v. Progressive N. Ins. Co.*, 801 N.W.2d 917, 920 (Minn. 2011)). "If the terms of the exclusion are unambiguous, [courts] then consider whether the exclusion omits coverage required by the No-Fault Act or contravenes the No-Fault Act." *Pepper*, 813 N.W.2d at 927 (citing *Latterell*, 801 N.W.2d at 921, and *Lobeck,* 582 N.W.2d at 249).

Here, the terms of the Criminal Act Exclusion are unambiguous. The Policy clearly excludes coverage for bodily injury "caused by, or reasonably expected to result from, a criminal act or omission of that insured person." ("Criminal Act Exclusion.") There is also no doubt that McMorris committed a criminal act when he pleaded guilty to violating Minn. Stat. § 609.487, subd. 4, and admitted that he killed Madrid Salcido with his vehicle while trying to flee the police. (Petition; Plea Hr'g Trans. at 9-11.)

To the extent Perea de Madrid argues that the Criminal Act Exclusion does not apply because it exempts traffic violations and it was McMorris's excessive speed that caused the Crash, the Court notes that the crime McMorris pleaded guilty to definitionally includes using increased speed to evade the police.[5] *See* Minn.

---

[5]    Further, an important element of Minn. Stat. § 609.487, subd. 4 is that the act of fleeing the police "causes the death" of another person. Therefore, by pleading guilty to violating this statute, McMorris admitted that his criminal act of fleeing the police caused Madrid Salcido's death. *See* Minn. Stat. § 609.487, subd. 4.

Stat. § 609.487, subd. 1.  Moreover, the plain meaning of the "traffic violation exception" is that the Criminal Act Exclusion does not preclude coverage when the insured has only committed a traffic violation because in that case, there would be no "criminal act." Here, even if the act of speeding were distinguishable from fleeing the police, McMorris would still have committed a criminal act and the Criminal Act Exclusion would still apply. *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 912 (8th Cir. 2007) (finding that defendant's guilty plea and criminal conviction conclusively established a criminal act).

Similarly, the Court finds that no ambiguity exists when an insured clearly commits a crime that results in an accident, with or without a separate traffic violation. The Court recognizes that because the Policy fails to define either criminal acts or traffic violations, it is conceivable that a situation could arise where it is unclear whether just a traffic violation—many of which are also classified as crimes—bars coverage.  Here, though, McMorris clearly committed a criminal act that triggered the Criminal Act Exclusion.

Therefore, applying the plain language of the Criminal Act Exclusion to the facts of this case, the Court finds that the Criminal Act Exclusion applies to preclude coverage as a matter of law.  The Court next addresses whether the Criminal Act Exclusion contravenes the No-Fault Act or omits coverage required by Minnesota law.

This is a third-party coverage case.  Perea de Madrid cites the residual liability provision of the No-Fault Act to argue that insurers are mandated to provide third-party coverage for accidents caused by the negligence of their insureds and that any exclusion,

11

including the Criminal Act Exclusion, that contradicts this mandate is void and

unenforceable.  That section specifically provides:

> (1)    Each plan of reparation security shall also contain stated limits of
> liability . . . with respect to each vehicle for which coverage is
> thereby granted, of not less than $30,000 because of bodily injury to
> one person in any one accident . . . .

> (2)    Under residual liability insurance, the reparation obligor shall be
> liable to pay, on behalf of the insured, sums which the insured is
> legally obligated to pay as damages because of bodily injury and
> property damage arising out of the ownership, maintenance or use of
> any motor vehicle . . . .

Minn. Stat. § 65B.49 subd. 3(1)(2).[6]  Perea de Madrid contends that because of the

mandate, no Minnesota court has affirmed an exclusion barring minimum coverage for an

---

[6]    Perea de Madrid focuses heavily on the language in Minn. Stat. § 65B.49
subd. 3(2) which states that "the reparation obligor shall be liable to pay, on behalf of the
insured, sums which the insured is legally obligated to pay as damages because of bodily
injury . . . arising out of the ownership, maintenance or use of any motor vehicle…" to
argue that the No-Fault Act mandates insurers to indemnify their insureds for all
accidents caused arising out of the ownership, maintenance, or use of any motor vehicle,
and that any exclusion to the contrary is invalid because it contravenes the No-Fault Act.

    Because McMorris was the named insured and driving his own vehicle for
personal reasons when he caused an accident, Perea de Madrid claims that Progressive
must indemnify him for the Crash.  Perea de Madrid reasons that because McMorris was
the named insured and Progressive issued the Policy despite knowing of his poor driving
history and drug convictions, Progressive knew the risk it was underwriting and charged
correspondingly high premiums.  Perea de Madrid claims that to affirm the Criminal Act
Exclusion, this Court "would have to conclude that the No-Fault Act allows an insurer to
take premiums with the promise to provide coverage to that specific person and vehicle
for liability resulting from an accident, and then exclude that very coverage when the
person, driving the vehicle, causes an accident."  (Def. Opp. at 6-7.)

    Perea de Madrid speculates that where other Courts have upheld exclusions to
residual liability coverage, it is because liability coverage follows the vehicle, and no

accident caused by a named insured's negligence while using the insured vehicle for personal reasons.  She also contends that public policy supports finding coverage, particularly for uncompensated accident victims.  Progressive argues that Minnesota's state and federal courts have consistently held that certain limitations to third-party liability coverage are permissible and there is no exception here.  Because the Criminal Act Exclusion is narrowly tailored and does not operate to foreclose all liability coverage, Progressive argues that it is enforceable and precludes coverage for the bodily injury caused by McMorris's criminal acts.  The Court agrees with Progressive.

The Court is sympathetic to Perea de Madrid's arguments, particularly given the tragic consequences of the Crash.  Even so, this Court is bound by the decisions of Minnesota's courts in interpreting Minnesota's law.  *Qwest Corp.*, 896 F.3d at 845. Because the primary purpose of the No-Fault Act is to ensure the availability of first-party benefits, Minnesota precedent—and federal courts applying Minnesota law— dictates that certain exclusions to liability coverage are not impermissible.  *See, e.g.*, *Lobeck*, 582 N.W.2d at 250; *Latterell*, 801 N.W.2d at 922; *Ill. Farmers Ins. Co. v. Eull*, 594 N.W.2d 559, 560–62 (Minn. Ct. App. 1999); *see also Great W. Cas. Co. v. Decker*, 957 F.3d 910, 915 (8th Cir. 2020); *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388 (8th Cir. 2010); *Gov't Employees Ins. Co. v. Knutson*, 499 F. Supp. 3d 618, 626 (D. Minn. 2020).  As the Eighth Circuit observed, "the Minnesota Supreme Court has held

---

other case involved a named insured who caused an accident while driving their own vehicle for personal use.

that the No-Fault Act permits insurers to limit liability coverage for third parties, at least

in certain circumstances." *Decker*, 957 F.3d at 915 (citing *Lobeck*, 582 N.W.2d at 251).

Likewise, the "Minnesota Court of Appeals has held that insurance companies can, in

some situations, limit their third-party liability coverage, even to the point of denying

coverage to named insureds and their families." *Id.* (citing *Eull*, 594 N.W.2d at 560-62).

(affirming exclusion that was not so broad as to foreclose liability coverage).

In short, Minnesota caselaw dictates that while the No-Fault Act mandates that

insurers provide liability coverage, there is no prohibition against exclusions that limit—

but do not foreclose—such coverage.  Perea de Madrid contends that because no court

has considered an exclusion that bars coverage for a named insured who causes an

accident while driving their vehicle for personal reasons, there is somehow an exception

to the well-established rule that insurers may impose restrictions on their liability

coverage to third parties.  The Court does not speculate how other courts would have

ruled under different sets of facts; however, it finds the distinction unavailing and

insufficient to uproot decades of precedent.[7]

---

[7]     The provision Perea de Madrid relies on does not distinguish between an "insured" and a "named insured." *See* Minn. Stat. Stat. § 65B.49 subd. 3(2).  The provision provides, "the reparation obligor shall be liable to pay, on behalf of the *insured*, sums which the *insured* is legally obligated to pay . . . ." *Id.* (emphasis added).  Because the provision does not provide a carveout for any of the reasons that Perea de Madrid claims make this case unique, the Court finds no reason to disturb the well-established principle that insurers may limit third-party coverage in some cases.  "If there is to be any change in the law, it will have to come from the legislature or the supreme court." *Eull,* 594 N.W.2d at 562.

14

Here, the Court finds that the Criminal Act Exclusion, which operates to preclude liability coverage for a limited category of conduct, is not so broad as to impermissibly foreclose all liability coverage.  Therefore, the Court concludes that the Criminal Act Exclusion does not contravene the No-Fault Act nor omit required coverage.[8]

## CONCLUSION

For the reasons set forth above, the Court finds that the Criminal Act Exclusion is enforceable and precludes liability coverage for the Crash.  Thus, the Court grants Progressive's Motion and denies Perea de Madrid's Motion.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff Progressive Preferred Insurance Company's Motion for Summary Judgment (Doc. No. [18]) is **GRANTED**.

---

[8]     The Court also observes that the Criminal Act Exclusion, as applied in this case, does not violate public policy.  As previously stated, a primary purpose of the No-Fault Act is to "relieve the severe economic distress of uncompensated victims."  Minn. Stat. § 65B.42(1).  During oral argument, counsel for Perea de Madrid informed the Court that Madrid de Salcido's vehicle was insured.  Therefore, this is not a case of uncompensated victims, but under-compensated victims.  *Knutson*, 499 F. Supp. 3d at 626.

2.      Defendant Martha Perea de Madrid's Motion for Summary Judgment (Doc.

No. [20]) is respectfully **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 28, 2021                  s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge